NATIONAL INDUSTRIAL ALCOHOL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4853.   Promulgated September 6, 1927.

1. No deduction for the obsolescence of a trade name may be allowed.

2. It was claimed that a valuable trade name was built up over a period of years by advertising. The cost of such advertising had been charged to expense. *Held,* that in the absence of any evidence on which the cost of such advertising may be apportioned between annual expense and cost of building up a trade name, no cost has been established for the trade name and no loss is proven when its use is discontinued, due to prohibition.

3. Deduction for obsolescence of beer vats and tanks, having no value after prohibition, allowed.

4. Deduction for obsolescence of portion of brewery building not allowed.

*R. M. O'Hara, Esq.,* for the petitioner.
*C. H. Curl, Esq.,* for the respondent.

The proceeding arises from the determination by the Commissioner of deficiencies of $12,457.39 and $6,819.67 in income and profits taxes for the fiscal years ended May 31, 1919, and May 31, 1920. Petitioner alleges that the Commissioner erred in computing net income in failing to allow any deductions in these years for losses resulting from the obsolescence of good will, trade names and trade brand and from the discard of tangible assets used in the manufacture of beer.

### FINDINGS OF FACT.

Petitioner was organized on March 25, 1911, under the laws of Louisiana, with its principal office in New Orleans, for the purpose of manufacturing, bottling and selling beer. It adopted the trade name " Old Heidelberg " for its product and used this trade name for its beer from 1912 until November 3, 1919. Between these dates, petitioner spent $30,820.62 for newspaper and souvenir advertising in the development of its business as follows:

Fiscal year ended May 31—

| | |
|---|---|
| 1913 | $5,833.59 |
| 1914 | 6,200.69 |
| 1915 | 6,734.06 |
| 1916 | 7,056.05 |
| 1917 | 4,996.23 |
| | 30,820.62 |

Nothing was spent for advertising after 1917. Its business consisted solely of the one product, " Old Heidelberg " beer. The amounts expended in advertising the trade name in newspapers and other advertising mediums were treated on the books of the corpo-

ration as expenses. On November 3, 1919, petitioner abandoned the manufacture of beer and the use of the trade name " Old Heidelberg " and entered upon the cereal-beverage, or near-beer business. In August, 1921 petitioner began to manufacture and sell industrial alcohol, which was not made as a by-product of the near beer, but as a separate enterprise. The net profit in the fiscal year ended May 31, 1920, during six months of which petitioner manufactured beer, was $85,274.83. During the fiscal year ended May 31, 1921, the company lost money on its brewery and made a profit on its distillery. The corporation discontinued the near-beer business in 1923 but continued its distillery business.

For the manufacture of its beer, petitioner had two brick buildings, separated by a driveway. Each was three stories high and of the same dimensions—100 feet by 50 feet. The walls of the brewery building were 2 feet thick and the walls of the cellar building were 4 feet thick and contained cork for insulation purposes. The foundation of the cellar building was heavier than the foundation of the brewery building. Only the cellar building had refrigeration pipes. The two buildings cost $115,348.93 in 1912. The depreciated cost as of May 31, 1918, including additions, was $124,119.09. These two buildings were constructed as a complete unit.

Petitioner had both wooden and steel vats installed in the cellar building when it began to manufacture beer. There were 24 steel tanks having a capacity of 180 barrels each and 8 steel tanks having a capacity of 215 barrels each. The 24 smaller tanks were on one floor. The 8 large tanks and 50 wooden tanks were on the other two floors.

The steel vats cost $19,712, of which the 24 smaller tanks cost $14,083.20 and the eight larger tanks $5,628.80. The wooden tanks cost $6,486.50. Such vats were depreciated by petitioner at the rate of 5 per cent per annum. Actual depreciation did not exceed that amount. The building is so constructed that the steel vats could not be removed without demolishing the building. The wooden vats could be removed, piece by piece, but could not be sold for an amount sufficient to pay the cost of removing them.

After prohibition, the brewery building and one floor of the cellar building were used in the manufacture of near beer. Two floors in the cellar building and the vats contained therein, consisting of the 8 large steel vats and the 50 wooden vats, were not used after November 3, 1919.

In computing net income the Commissioner refused to allow any deduction for loss or obsolescence of good will, trade names, trade brands or buildings and equipment.

Phillips: Petitioner claims a loss for the obsolescence of its good will, trade names and trade brands. It has, heretofore been held that such items are not the subject of an obsolescence deduction within the meaning of the Act. *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626; *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952; *William Zakon* v. *Commissioner*, 7 B. T. A. 687.

We have held, however, in the last cited case that a loss may be had in the year in which such property is abandoned or becomes worthless. The difficulty here is to determine, if possible, what may be considered as the cost of a trade-mark, built up by advertising in the course of the years. From 1913 to 1917 petitioner spent $30,820.62 in advertising its one product. No doubt a part of this cost resulted in an immediate benefit to the petitioner and was reflected in its current sales. At least, petitioner appeared to believe so, for it charged off the entire amount at once. Perhaps another part of this expenditure for advertising might be considered as creating a permanent good will. Certainly all sums spent in advertising a trade-marked product are not to be considered as the cost of the trade name. Here we meet the same situation as confronted us in *Northwestern Yeast Co.*, 5 B. T. A. 232, and *Richmond Hosiery Mills*, 6 B. T. A. 1247, being without any evidence of the basis on which the cost of advertising the product may be divided between current annual expense and the creation of a capital asset. Any apportionment we might attempt would be unsupported by evidence and would scarcely rise to the dignity of a guess. In the circumstances, no deduction can be allowed. Since the petitioner has had the benefit of these deductions in computing its taxable income in the years in which the advertising took place, it does not appear that any injustice will result.

The petitioner claims that it should be entitled to a deduction in the taxable years for the discontinuance of the use of two-thirds of its cellar building and the 8 steel vats and 50 wooden vats which were no longer used. The evidence is sufficient to permit a computation to be made of the depreciated cost of these items, if any deduction is proper. So far as the vats on which deduction is claimed are concerned, it appears that petitioner abandoned their use on November 3, 1919, never used them thereafter and that they have no salvage value. In our opinion their depreciated cost may be deducted as obsolescence over the period from December 18, 1917, to January 16, 1920. *Appeal of Manhattan Brewing Co., supra.* We fix January 16, 1920, the effective date of the National Prohibition Act, as the expiration of the period, rather than November 3, 1919, because it was

not certain until this later date that the equipment could not again be used.

A different situation arises with respect to the building. While petitioner discontinued the use of two-thirds, there is nothing in the record to indicate that this structure was obsolete or becoming so. It is not sufficient to sustain a deduction to show only that the building can not be used in the petitioner's business. It is entirely possible that such a building was convertible for use in some other business in which refrigeration was necessary. There is no evidence that any effort was made to dispose of the building, or to find any other use for it. The action of the Commissioner in refusing to allow any obsolescence on the building must be approved.

> *Decision will be entered on 15 days' notice, under Rule 50.*

Considered by MARQUETTE, MILLIKEN, and VAN FOSSAN.